IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANDREI GLUCK, | § | |
| Movant, | § | |
| | § | |
| v. | § | No. 3:16-CV-961-M-BT |
| | § | (3:13-CR-002-M (1)) |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Movant Andrei

Gluck's 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence, *see*

Dkt. No. 2, was referred to the United States magistrate judge for findings of fact,

conclusions of law, and recommendation. For the reasons that follow, the Court

should deny Gluck's Section 2255 motion with prejudice as meritless.

### I.    BACKGROUND

On July 22, 2012, Dallas Police Officers responded to the
suicide call at 5355 Willis Ave. . . . Upon arrival officers found
Gluck's girlfriend had committed suicide in the garage area. Gluck
was at the location and upset. Gluck invited the officers into his
house to talk to the officers and recover his girlfriend's identification.
Once inside the residence the officers smelled a strong odor of
marijuana coming from inside the house. While standing in the
kitchen they observed marijuana on top of the kitchen counters in
plain view. They also observed a scale, baggies and other drug
paraphernalia. The officers called for a narcotics investigator and
obtained a search warrant for the location.

While executing the search warrant officers found over six
pounds of marijuana and four firearms from various locations in the
house.

*United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. No. 64 at 3.

Gluck was indicted on one count of being a felon in possession of a firearm; two counts of possession with intent to distribute a controlled substance; and one count of possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). *United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. No. 1. He later pleaded guilty to all four counts. *United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. No. 62. Gluck and the government negotiated a stipulated sentence of 180 months' imprisonment. *See id.* at 4 ("If the Court accepts this plea agreement, this [sentencing] provision is binding on the Court."). After conducting an arraignment hearing, the Court accepted Gluck's guilty plea and the parties' stipulated sentence. *See United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. No. 103 at 26.

Before the Court imposed that stipulated sentence, however, Gluck moved to withdraw from the sentence-stipulation. *See United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. No. 67. He maintained that he was guilty of the four charges against him, but he wanted the Court to sentence him without the stipulation because he believed that his proposed sentence under the United States Sentencing Guidelines ("U.S.S.G.") would be less than the 180-month sentence to which he had stipulated. *See id.* at 2 ("[Gluck] does not wish to proceed to trial, and intends to persist in his plea of guilty to all four counts. [His] sole intent is to withdraw from the Rule 11(c)(1)(C) provisions of the plea

agreement . . . [because] he believes there are mitigating factors that the Court would consider absent being bound" by the stipulation). The Court held a hearing on Gluck's request. *See United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. No. 98. At the hearing, the Court conducted a thorough colloquy with Gluck during which he affirmed that he was guilty of the charged offenses, but that he desired the Court to impose whatever sentence it saw fit, even though Gluck potentially faced a sentence as severe as life in prison. *See id.* at 6-7. At the conclusion of the hearing, the Court permitted Gluck to withdraw from the sentence-stipulation. *See id.* at 17.

A Presentence Report ("PSR") was prepared. *See United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. No. 71. Applying the 2013 U.S.S.G., the PSR calculated Gluck's sentencing range as 360 months-to-life in prison; that calculation was driven by the application of the career-offender enhancement under U.S.S.G. § 4B1.1. *See id.* at 25. That enhancement was predicated on Gluck's two prior felony convictions for crimes of violence—"Robbery, Case No. F-9678473, and Evading Arrest With a Motor Vehicle, Case No. F-0351313." *See id.* at 12-13. Gluck filed numerous objections to the PSR, but the Court overruled them. *See United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. Nos. 80 & 81; *see also United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. No. 94 (adopting the PSR).

But, on the eve of sentencing, Gluck and the government reached a new agreement, stipulating to a 210-month sentence. *See United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. No. 90 at 4. At sentencing, the Court imposed the stipulated sentence—for the controlled substance offenses, and the felon in possession count, Gluck was sentenced to three, concurrent 120-month terms; for the Section 924(c) offense, the Court sentenced Gluck to a 90-month term, to be served consecutive to the other three terms. *See United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. Nos. 93 & 100.

After an unsuccessful direct appeal, *see United States v. Gluck*, 589 F. App'x 295 (5th Cir. 2015), Gluck filed this Section 2255 motion. *See* Dkt. Nos. 2 & 5. He claims that his plea counsel was ineffective for "using deceptive tactics" to pressure him to plead guilty, for failing to properly investigate his case, for failing to request that the Court re-arraign him before it sentenced him on the Section 924(c) count, and for failing to file a motion to suppress the evidence that the police recovered from his home. *See* Dkt. No. 5 at 9. Gluck further claims that his counsel was ineffective at sentencing for failing to object to the Court's sentencing calculation on the grounds that Gluck was not a career offender because his prior robbery conviction did not qualify as crime of violence and his prior evading arrest conviction occurred after the instant federal offense. *See id.* at 30-35. Gluck further urges that he never violated Section 924(c) and is "actually innocent" of that charge. *See* Dkt. No. 5 at 20-26. Gluck later amended his

Section 2255 motion to add a claim challenging the constitutionality of the phrase "crime of violence" found in U.S.S.G. § 4B1.2 under the reasoning of *Johnson v. United States*, 135 S. Ct. 2551 (2015). *See* Dkt. No. 13.

## II.    LEGAL STANDARDS AND ANALYSIS

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). To obtain post-conviction relief on a claim that his counsel was constitutionally ineffective, Gluck must satisfy the two-pronged test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). First, he must show that counsel's performance fell below an objective standard of reasonable professional service. *See id.* at 687. Second, he must establish that his counsel's substandard performance caused prejudice. *See id.* at 691-92.

### A. <u>Counsel's Performance at the Plea Stage</u>

1.   Claim (1): Counsel was ineffective for explaining that, if he went to trial, the government would indict his mother.

Gluck first claims that his counsel was ineffective when she "relayed" to him the fact that, if Gluck proceeded to trial, the government would indict his mother for her attempts to hide marijuana before the police searched Gluck's home. *See* Dkt. No. 5 at 14-17 ("counsel[,] after several meetings with the prosecution, relentlessly relayed to Mr. Gluck the [government's] intentions of prosecuting his mother if he chose to fight it rather than plead guilty.").

5

Gluck's counsel cannot be deemed ineffective for "relaying" the government's position that it would prosecute Gluck's mother if he went to trial. Indeed, Gluck's counsel had a duty to "communicate formal offers from the prosecution [to Gluck] to accept a plea on the terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). Had counsel refused to communicate the government's position on a prospective plea offer to Gluck, she would have violated his right to effective assistance of counsel. *See id.* Gluck's counsel cannot be deemed ineffective for complying with her constitutional duty. So there is no merit to claim (1).

Moreover, there is no merit to Gluck's related claim that the government unlawfully coerced him into pleading guilty when it threatened to prosecute his mother. There is "no intrinsic constitutional infirmity in broadening plea negotiations so as to permit third party beneficiaries." *United States v. Nuckols*, 606 F.2d 566, 569 (5th Cir. 1979); *see also id.* ("It is generally within a prosecutor's discretion merely to inform an accused that an implicated third person 'will be brought to book if he does not plead (guilty).'") (*quoting Kent v. United States*, 272 F.2d 795, 798 (1st Cir. 1959)). Of course, a "prosecutor has a duty of good faith" in representing that he will prosecute a third party; that duty "is satisfied where he has probable cause to believe the third person has committed a crime." *United States v. McElhaney*, 469 F.3d 382, 385 (5th Cir. 2006).

Here, the government had probable cause to believe that Gluck's mother had, at the very least, attempted to obstruct justice. Video recorded from Gluck's security camera showed that while "Gluck [was] speaking with officers . . . Gluck's mother can be seen inside the house cleaning the place, hiding marijuana, putting marijuana and other items in a trash bag, removing the trash from the residence, and making sure the safe is locked." *See United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. No. 71 at 7. In light of that evidence, the government acted in good faith when it informed Gluck that his mother could be charged for her criminal conduct. Because the government had a good-faith basis to threaten charges against Gluck's mother, his choice "to 'sacrifice himself for such motives' is not a basis to challenge the voluntariness of [his] plea." *McElhaney*, 469 F.3d at 386 (quoting *Nuckols*, 606 F.2d at 569).

Gluck also claims that his counsel should have conducted a more thorough investigation into his mother's actions. *See* Dkt. No. 5 at 17 ("the videotape does not show, nor can one determine, if the substance which was allegedly seen on the video is indeed marijuana nor can it be determined by the video whether Gluck's mother possessed the mind state to aid and abet or whether she was aware that by her innocent action of 'cleaning the place,' she was in fact obstructing justice."). To succeed on his challenge to counsel's investigation, Gluck is required to "allege with specificity what [further] investigation would have revealed and how it would have altered the outcome" of the proceeding.

7

*United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). But he has not attempted to make either showing. He does not argue—let alone offer credible evidence to show—that his mother removed something other than marijuana from the house before the police could search it. And, he offers no theory as to how any additional investigation would have unearthed evidence that would have exculpated his mother and thus, in turn, might have impacted his decision to plead guilty. Thus Gluck is not entitled to relief on his claim that counsel failed to conduct an adequate pre-plea investigation.

In sum, the Court should deny claim (1) with prejudice as meritless.

2. Claim (3): Counsel was ineffective for failing to request that the Court re-arraign Gluck before sentencing.

Gluck's first plea agreement stipulated that he would receive a 60-month sentence—the minimum sentence allowed by statute—for his Section 924(c) conviction. Gluck withdrew from that agreement but later entered into a second plea agreement, which provided for a 90-month sentence for his Section 924(c) conviction.

Gluck now claims that his counsel should have requested that the Court explain to him, for a second time, the essential elements of Section 924(c), as well as the possible sentences for a conviction under that Section. Gluck claims to believe that he could only be sentenced to more than 5 years in prison if he "brandished" or "used" the firearm while trafficking drugs, *see* Dkt. No. 5 at 29 ("[T]he petitioner contends that it was not even alleged that [he] brandish[ed] the

firearm which according to [Gluck's] limited knowledge would have been the only reason that his sentence could exceed 5 years.")—though he contradicts himself in other parts of his motion, *see* Dkt. No. 5 at 25 ("the petitioner was fully aware of the 'penalty' for the 924(c) offense, as he was constantly advised that if he went to trial, he could get a life sentence."). Petitioner further claims that, if he had been re-arraigned, he would have learned that he could receive more than 5 years for merely possessing the firearm in furtherance of his drug trafficking crimes, and he would have never pleaded guilty. *See* Dkt. No. 5 at 29.

Gluck's claim is plainly meritless. When Gluck pleaded guilty to violating Section 924(c), the government—at the Court's request—set out for him each of the elements of that offense. *See United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. No. 103 at 8 ("First, that the defendant committed a drug-trafficking offense as alleged in count two; namely, possession with intent to distribute a controlled substance, in violation of [18] U.S.C. § 841(a)(1) and (b)(1)(D); Second, that the defendant knowingly possessed a firearm in furtherance of a drug trafficking crime."). The government also explained to Gluck the possible penalty for violating Section 924(c)—"[a] mandatory term of imprisonment for a period of not less than five years and not more than life, to be served consecutively to any other counts." *See id.* at 13. Gluck swore that he understood the elements of Section 924(c) and the potential penalty if he pleaded guilty. *See id.* at 13-14. Moreover, when Gluck sought to withdraw from his stipulated sentence, he was

9

warned again that he could be sentenced to life in prison for his Section 924(c) conviction. *See United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. No. 98 at 14 ("[The Court] did cover the range of punishment would be . . . 60 [months] to life.").

Because Gluck knew well the elements of Section 924(c), and the potential penalties of a conviction under that Section, he cannot show that his counsel was deficient in failing to request that the Court explain that information to him again. Therefore, he is entitled to no relief on claim (3).

    3. Claim (6): Counsel was ineffective for failing to file a motion to suppress.

Gluck argues that his counsel was ineffective when she failed to file a motion to suppress any evidence that the government recovered from Gluck's house. *See* Dkt. No. 5 at 35-41. He constructs that argument on a series of allegations, each of which contradict facts that Gluck swore to the Court were true. Specifically, in his factual resume, Gluck admitted:

> Gluck invited the officers into his house to talk to the officers and recover his girlfriend's identification. Once inside the residence the officers smelled a strong odor of marijuana coming from inside the house. While standing in the kitchen they observed marijuana on top of the kitchen counters in plain view. They also observed a scale, baggies and other drug paraphernalia. The officers called for a narcotics investigator and obtained a search warrant for the location.

*United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. No. 64 at 3. And at his re-arraignment hearing, Gluck swore to the Court, under oath, that "every statement of fact contained in the factual resume was true and correct." *United*

10

*States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. No. 103 at 4, 10.

Now, for the first time in this habeas proceeding, Gluck alleges a different version of events. He claims that police officers walked into his house "without permission, so that they could claim they smelled or observed something that warranted a search." Dkt. No. 5 at 35. He further claims that there was no evidence of any illegal activity in plain view. *See* Dkt. No. 5 at 40 (alleging that "there was no marijuana bud on [Gluck's] kitchen counter"). Thus, he argues, his counsel was ineffective for failing to file a motion to suppress any evidence the police recovered from that unlawful search.

A defendant's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "Thus, a defendant ordinarily may not refute his sworn testimony at a plea hearing while under oath." *United States v. Soliz*, 359 F. App'x 466, 470 (5th Cir. 2009). In addition to sworn testimony, official documents—such as Gluck's written plea agreement and his stipulated factual resume—are "entitled to a presumption of regularity and are accorded great evidentiary weight." *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985).

To overcome those presumptions, a Section 2255 movant must "produce[] independent indicia of the likely merit of [his] allegations." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). Typically, such proof comes "in the form of one or more affidavits from reliable third parties." *Id.*; *see also, e.g.*,

*United States v. Perez*, 227 F. App'x 357 (5th Cir. 2007) (concluding that two affidavits—which described independent accounts with credible details and adequate specificity—were sufficient to support the movant's allegations and warrant an evidentiary hearing). But where the movant fails to make a sufficient showing to meet his burden of proof in light of the record evidence, he is entitled to neither an evidentiary hearing nor post-conviction relief. *Cervantes*, 132 F.3d at 1110.

Although Gluck has submitted affidavits from five witnesses in support of his Section 2255 motion, none of them sufficiently support the allegations underpinning his ineffective assistance claim. The crux of Gluck's claim is that the officers entered his house without his consent, which contradicts his earlier sworn statement that he "invited the officers" into his house.

Gluck cannot rely only on his own, self-serving affidavit to support that claim. *See Cervantes*, 132 F.3d at 1110; *see also United States v. Merrill*, 340 F. App'x 976, 978 (5th Cir. 2009) ("His own affidavit, containing self-serving conclusional allegations, is insufficient."). And of the five third-party affidavits that Gluck submitted, only one—from Gluck's mother, Theodora Gluck—addresses his allegation regarding the officers' unauthorized entry:

> Approximately 8:15 a.m., [Gluck] spoke with the officers outside his home and I remained inside the residence located at 5355 Willis Avenue, Dallas, Texas 75206. [Gluck] came inside the home to retrieve Mrs. Tina Ortiz's I.D. when Dallas police officers entered the residence unannounced and uninvited.

*United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. No. 5 at 49-50.[1] This affidavit does not help Gluck. It is clear from her affidavit that Gluck's mother was in the house, while Gluck and the officers were outside; thus she was not privy to their conversation, during which Gluck invited the police inside. The fact that "[she] was not an eyewitness to the events in question" is "fatal to [her affidavit's] value as independent indicia." *United States v. Franks*, 397 F. App'x 95, 101 (5th Cir. 2010). Moreover, Gluck's mother's allegation that the police entered "unannounced and uninvited" is bald and conclusory; she fails to explain how she knows that Gluck did not invite the police inside. Thus her affidavit fails to rebut, with the required reliability or specificity, Gluck's earlier sworn statements that he invited the officers into his house. *See Merrill*, 340 F. App'x at 979 (noting that an affidavit was insufficient to support the movant's claims where "it does not describe with any specificity where or when the alleged promise by counsel was made, and, more fatally, it does not indicate that [the affiant] was in fact an eyewitness to any promise made by counsel.").

Gluck's related allegation—that the police did not see marijuana in plain view—is also contradicted by his factual resume and unsupported by any independent evidence. On that point, both of Gluck's parents attest only that Gluck told them, after his arrest, that a review of his home-security footage would have shown that there was no marijuana in plain sight on the kitchen counter.

---

[1] The other witnesses' affidavits make clear that they did not arrive to Gluck's home until after the police had already entered and observed evidence of Gluck's crimes in plain view.

13

*See United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. No. 5 at 51 ("[Gluck] also stated that the video footage would show that there was no marijuana in plain view"); *See also United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. No. 5 at 55 ("Also during visits with [Gluck] he had stated that the DVR Video shows that there was no marijuana in plain view."). But neither witness claims that he or she viewed the video independently and confirmed that there was no marijuana in plain view. More critically, Gluck's mother—who averred that she was in the house when the police entered it—never avers that there was no marijuana in plain view. Because neither affidavit offers "independent indicia" of the merit of Gluck's allegation that the drugs were not in plain view, *see Cervantes*, 132 F.3d at 1110-1111, and because his own self-serving statements to his parents are not sufficient to rebut his sworn statements to the Court, he is not entitled to an evidentiary hearing on his claim.

In sum, Gluck's claim that his counsel was ineffective for failing to file a motion to suppress is based on a set of allegations that are clearly contradicted by his prior sworn statements and his submissions to the Court. Because Gluck has failed to offer independent, credible evidence to rebut the presumed verity of his earlier admissions, the Court should reject his claim that his counsel was ineffective for failing to file a motion to suppress.

## Counsel's Performance at Sentencing

14

Gluck contends that his counsel was ineffective for failing to challenge the Court's application of U.S.S.G. § 4B1.1, which was predicated, in part, on his prior Texas conviction for robbery. Gluck argues that he is "actually and factually" innocent of "first degree robbery," but he concedes that he committed "simple robbery." *See* Dkt. No. 5 at 30 (arguing that he pleaded guilty to "simple robbery," but when he violated his probation, he was adjudicated guilty of "robbery in the first degree"—the offense with which he was initially charged).

Gluck is not entitled to relief on this claim because he cannot show deficient performance or prejudice. Whether Gluck was convicted of "aggravated robbery" or "simple robbery" is immaterial—any Texas robbery conviction is a proper predicate for the career offender enhancement under the 2013 version of the U.S.S.G.

Under the 2013 version of U.S.S.G. § 4B1.1, a defendant was a career offender if, inter alia, he had at least two prior felony convictions for crimes of violence. *See* U.S.S.G. § 4B1.1(a) ("A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."). The commentary to U.S.S.G. § 4B1.2—which defined the phrase "crime of violence"—enumerated various offenses that

15

qualified as crimes of violence, including "robbery." *See* U.S.S.G. § 4B1.2 cmt. n. 1 ("'Crime of violence' includes murder, manslaughter . . . robbery . . .").

Moreover, the United States Court of Appeals for the Fifth Circuit has repeatedly held that Texas "simple" robbery qualifies as a robbery under U.S.S.G. § 4B1.2. *See, e.g.*, *United States v. Deal*, 693 F. App'x 341, 341 (5th Cir. 2017) ("Texas robbery qualifies as an enumerated crime of violence under the former commentary to § 4B1.2."). It follows, of course, that Gluck's counsel was not ineffective for refusing to argue that Gluck's Texas robbery conviction—whether it was correctly classified as simple or aggravated robbery—was not a proper predicate for the career offender enhancement.

Gluck also claims that his counsel was ineffective for failing to challenge the career offender enhancement on the ground that he did not suffer his conviction for evading arrest until after he sustained the instant conviction. *See* Dkt. No. 5 at 34. Gluck argues that his "evading arrest state conviction was vacated on August 12, 2013. . . . [He] was later convicted again for evading arrest on August 22, 2013," which conviction was entered after he committed the instant federal offenses. *Id.*

There is no merit to Gluck's allegations. In Cause No. MA98-40375-A, in 2003, Gluck pleaded guilty to felony evading arrest. Ten years later, he filed a motion, requesting that the state court rule that his 2003 conviction was a misdemeanor, not a felony. On August 12, 2013, the state court entered such an

order, decreeing that Gluck had pleaded guilty to a misdemeanor. *See United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. No. 47 at 36. However, shortly thereafter, the state court vacated that order. *See United States v. Gluck*, No. 3:13-cr-2-M-1 (N.D. Tex.), Dkt. No. 47 at 49. After reviewing the plea colloquy, the state court made clear that Gluck "was found guilty of a state jail felony as originally indicated in the judgment." *See id.*

There is no merit to Gluck's claim that his state conviction was "vacated" and that he was later "convicted again" on August 23, 2013. Rather, as set out above, Gluck asked the state court to decide that his prior conviction was a misdemeanor, not a felony, under state law. The state court never "vacated" Gluck's conviction for evading arrest, nor created a new judgment. And Gluck's counsel cannot be deemed ineffective for failing to misrepresent to the Court the nature of Gluck's state court proceedings so that he might evade the career offender enhancement.

## Claim (2): Gluck is "actually innocent" under Section 924(c)

Gluck argues that he is actually innocent of his Section 924(c) conviction. *See* Dkt. No. 5 at 20 ("In the instant case, [Gluck] contends that the firearm in his case did not in any way help[], further, promote[], or advance[] drug trafficking."); *see also id.* at 26 (arguing that "he is actually and factually innocent of that conviction."). Courts in the Fifth Circuit "'do[] not recognize freestanding actual innocence claims.'" *United States v. Shepherd*, 880 F.3d 734, 740 (5th Cir.

17

2018) (quoting *United States v. Fields*, 761 F.3d 443, 479 (5th Cir. 2014)). So, Gluck's freestanding claim that he is actually innocent is not cognizable in this habeas proceeding, and Gluck is entitled to no relief on claim (2).

## Claim (7): Gluck's Due Process challenge to the U.S.S.G.

Gluck also relies on *Johnson* to challenge as vague the definition of the phrase "crime of violence" in U.S.S.G. § 4B1.2. *See* Dkt. No. 13. But, that claim is foreclosed by *Beckles v. United States*, 137 S. Ct. 886 (2017). *Johnson* held that imposing an increased sentence under the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e) violates the Constitution's guarantee of due process. Yet, in *Beckles*, the Supreme Court made clear that "the Guidelines are not subject to a vagueness challenge under the Due Process Clause." 137 S. Ct. at 892; *see also United States v. Martinez*, 682 F. App'x 304, 304 (5th Cir. 2017) (*Beckles* "squarely held that the Sentencing Guidelines are not subject to vagueness challenges under the Due Process clause."). Thus there is no merit to Gluck's claim that *Johnson* narrowed the U.S.S.G.'s definition of "crime of violence" such that his prior felony convictions no longer qualify.

## III.    RECOMMENDATION

The Court should deny Gluck's Section 2255 motion with prejudice as meritless.


SIGNED May 29, 2018.

_Rebecca Rutherford_

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

19